### In re SEJO ICE CREAM CO.

(District Court, N. D. New York. September 12, 1910.)

1. INSURANCE (§ 580*)—INSURANCE AGENTS—ADVANCE OF PREMIUMS—LIEN ON PROCEEDS OF INSURANCE.

A fire insurance agent, who made advances for an insured of premiums on policies which have expired, in the absence of a definite contract therefor, has no equitable lien for such advances on the proceeds of a subsequent policy on the property which is in force at the time of a loss.

[Ed. Note.—For other cases, see Insurance, Dec. Dig. § 580.*]

2. INSURANCE (§ 580*)—INSURANCE AGENTS—ADVANCE OF PREMIUMS—LIEN.

A provision of a mortgage on real estate that, if the mortgagor does not keep the property insured, the mortgagee may do so and add the amount of the premiums paid to the mortgage debt does not inure to the benefit of an insurance agent who advances such premiums for the mortgagor.

[Ed. Note.—For other cases, see Insurance, Dec. Dig. § 580.*]

In the matter of the Sejo Ice Cream Company, bankrupt. On motion for order. Motion granted.

Thos. O'Connor, for petitioner, David M. Morey.
Jas. P. Hill and John Scanlon, for Eli M. Powell.

RAY, District Judge. May 20, 1910, David Morey was appointed receiver of the Sejo Ice Cream Company, and July 25, 1910, was appointed trustee of the estate of said company. May 13, 1910, the plant of said company, owned by it, was partially destroyed by fire. The Union National Bank of Troy held a mortgage on such plant, dated March 12, 1908, for $7,000 originally, due March 12, 1913, recorded March 13, 1908, in Rensselaer county clerk's office. The mortgage

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

contained the usual insurance clause whereby the company, owner, was to keep the buildings on said premises insured against fire in some solvent company in a sum not less than $700 and assign the policy to the bank. In default the bank could effect such insurance, and the premiums paid were to become a lien on the premises and be added to the amount of the mortgage. This of course meant that premiums paid by the bank were to become a lien, and had no reference to premiums paid or agreed to be paid by the company, owner.

Eli M. Powell of Waterford, N. Y., was the agent of the Liverpool & London & Globe Insurance Company, and of other companies. Prior to the fire he had insured the buildings and also the machinery, etc., in the buildings in the London & Liverpool & Globe and also in the Royal Insurance Company, the policies on the buildings being separate from those on the contents, for the Sejo Ice Cream Company, and so far as appears at its request, the policies being payable to the Union National Bank as its interests might appear. There is no allegation or proof that any of the insurance was effected by the bank, or that it became liable for the premiums. At the time of the fire the Sejo Ice Cream Company owed Powell a balance of $520.92 for unpaid premiums on such insurance effected between March 13, 1908, and December 21, 1909; payments on account having been made from time to time. This indebtedness included $176.40 for premiums on two policies of insurance on the buildings, one issued by London & Liverpool & Globe December 21, 1909, the premium being $88.20 on each, and also $111.30 premiums on insurance effected on the contents of such buildings insured at the same time by such companies. These four policies last mentioned had not been delivered by Powell to the Sejo Ice Cream Company when the fire, which damaged the buildings but not the contents, so far as appears, occurred. After the fire the policies were delivered, and the premiums on the two policies in force for insurance on the buildings were paid by the check of the Union National Bank, $176.40. Eliminating premiums for insurance on contents of buildings, there is a balance due Powell of $153.23 for premiums for insurance on the buildings during the time mentioned; but this balance is for old and expired insurance.

There is no evidence or contention of any agreement that Powell should hold the policies as security for this old indebtedness, or that there was any agreement, when they were surrendered after the fire, that this old indebtedness should be paid from the proceeds of the insurance. As I understand the contention, it is that Powell has an equitable lien or claim on the draft given to satisfy the loss by the fire mentioned and given to satisfy the policy in force when the fire occurred, for the balance due him for premiums advanced to effect the insurance on the buildings in prior years while the bank held the mortgage, and which insurance had expired when the loss occurred. If Powell has any such lien, it must arise under some statute or rule of the common law; it is not based on any contract or agreement. I know of no rule of law or equity which, in the absence of specific agreement, gives to a fire insurance agent a lien on a draft, check, or money, delivered to him by the company he represents to pay to the insured the amount of loss sustained by fire and secured by a policy

in force, for old premiums for old and expired insurance on the property advanced by such agent to his company. Clearly no such rule can be held against the mortgagee. The insurance having been effected by the owner, the mortgagee could assume the premiums had been paid so far as old and expired insurance was concerned. Clearly, if the agent gave the owner credit for such premiums, the proceeds of live insurance at the time of a fire could not, in the absence of agreement, be depleted to pay such old indebtedness. The bank here is willing that Powell be paid from this draft provided the amount so paid can be added to its mortgage lien and come back to it out of the mortgaged property. The effect of this would be to give Powell a lien on the real estate as against the general creditors on the ground he had given the owner credit for premiums on insurance obtained on the property in bygone years and kept the mortgagee, and hence the general creditors, to an extent, protected against loss by fire. I am cited to no authority holding that this can be done. In legal effect such a holding would give every fire insurance agent, by operation of law, a lien on real estate for premiums advanced by him at the request of the insured to obtain policies of insurance on the buildings on such real estate. I am not aware of any such rule of law or equity.

The draft in question is made payable to the Sejo Ice Cream Company and the Union National Bank. It must be delivered to the bank and the trustee of the Sejo Ice Cream Company. They will settle their rights to the proceeds as between themselves. It is evident that the rights of the bank are, to the extent of the amount due and unpaid on the mortgage, superior to those of the trustee. These rights, if there be any conflict, are not now before this court. Mr. Powell has delivered the draft to this court, and it will be delivered to such party as the trustee and bank agree upon.

There will be an order accordingly.